NOT FOR PUBLICATION (Doc. No. 27)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| KEN WILSON, | |
| Plaintiff, | Civil No. 10-3866 (RBK/JS) |
| v. | **OPINION** |
| CITY OF CHERRY HILL, et al., | |
| Defendants. | |

**KUGLER**, United States District Judge:

This case arises from Plaintiff's alleged assault by a federal officer. Plaintiff asserts claims for violation of his due process and Fourth Amendment rights as well as tort claims pursuant to the Federal Tort Claims Act. Defendant Jason Player moves to dismiss all claims against him. For the reasons discussed below, the Court dismisses all claims against Defendant Player except Plaintiff's Fourth Amendment claim against Defendant Player in his individual capacity.

**I.    BACKGROUND[1]**

On July 21, 2009, Plaintiff drove to the Clarion Hotel in Cherry Hill, New Jersey with a "companion." (Am. Compl. ¶ 18). When Plaintiff got into his vehicle to leave the hotel, he was approached by unidentified "individuals wearing street clothes and brandishing handguns." (Id. ¶ 19). Plaintiff drove away from the "assailants." (Id. ¶ 20). Officer James Glatz, a police officer with the Cherry Hill police department, immediately stopped Plaintiff. Officer Glatz was

---
[1] The facts are taken from the Amended Complaint. (Doc. No. 8).

1

driving an unmarked police car.  Officer Glatz ordered Plaintiff to get out of his vehicle and lay on the ground.  Plaintiff complied with Officer Glatz's instructions.  Officer Glatz handcuffed Plaintiff while he was lying on his stomach with his hands behind his back.  Plaintiff did not resist.

Minutes after Officer Glatz handcuffed Plaintiff, Drug Enforcement Agency ("DEA") Officer Jason Player arrived at the scene in an unmarked vehicle.  Plaintiff alleges that Officer Player exited his vehicle and charged toward Plaintiff yelling:  "You're going to run from me Mother Fucker."  (Am. Compl. ¶ 26).  According to Plaintiff, Officer Player repeatedly kicked Plaintiff in the face while Plaintiff was lying on his stomach with his hands in cuffs behind his back.  The alleged beating rendered Plaintiff unconscious.

Eventually, paramedics arrived and transported Plaintiff to Kennedy Hospital in Cherry Hill, New Jersey, where doctors diagnosed him with severe facial fractures.  Because of the severity of Plaintiff's injuries, doctors transferred him to Cooper Hospital's Trauma Unit.  Plaintiff spent seven days in Cooper Hospital.  During that time, doctors operated on Plaintiff to repair his facial fractures by inserting permanent corrective hardware.  Plaintiff claims that he has not recovered from the beating, and that he needs additional surgeries to repair his face.

Plaintiff filed the Complaint pro se in August 2010.[2]  (Doc. No. 1).  He subsequently retained counsel and filed an Amended Complaint in October 2010.  The Amended Complaint names as Defendants the City of Cherry Hill (the "City"), the Cherry Hill Police Department (the "Department"), Officer Glatz, and Officer Player.[3]  (Doc. No. 8).  Plaintiff sues Officer Glatz

---

[2] Plaintiff submitted the Complaint in July 2010 without paying the filing fee.  He paid the filing fee in August 2010, and the Clerk of the Court officially docketed the Complaint upon receiving the fee.

[3] The Amended Complaint also includes the following unnamed Defendants:  "John Doe, Sergeant City of Cherry Hill Police Department," "John Doe, Captain City of Cherry Hill Policy Department," and "Officers John Doe I-III, City of Cherry Police Department."  (Doc. No. 8).

and Officer Player in their individual and official capacities.  The Amended Complaint asserts the following claims:  (1) "Fourth Amendment – Unlawful Search and Seizure, Excessive Force" (against all Defendants); (2) "Fourteenth Amendment – Substantive Due Process" (against all Defendants); (3) "Fourteenth Amendment – Procedural Due Process" (against all Defendants); (4) "Monell Claim" (against the City and the Department); (5) "Assault and Battery" (against Officer Player and John Does I-III); and (6) "Intentional Infliction of Severe Emotional Distress" (against Officer Player and John Does I-III).

Officer Player answered the Amended Complaint (Doc. No. 25) and moved to dismiss all claims against him pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[4] Regarding Plaintiff's common law tort claims, Officer Player submits a certification from the Chief of the Civil Division in the United States Attorney's Office for the District of New Jersey stating that Officer Player was acting within the scope of his employment.  Officer Player argues that pursuant to 28 U.S.C. § 2679(d)(1) the certification has the affect of dismissing all common law tort claims against him and substituting the United States as the proper Defendant regarding Plaintiff's tort claims.  According to counsel for the United States, the Court should dismiss Plaintiff's common law tort claims against the United States because Plaintiff failed to exhaust administrative remedies as required by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. ("FTCA").

---

[4] Officer Player does not specifically request that Plaintiff's Fourth Amendment claim be dismissed as against him. However, Officer Player moves to dismiss all of Plaintiff's § 1983 claims because Officer Player was not acting under color of state law.  Officer Player also argues that "the Complaint . . . does not cite Bivens as the basis for any of its claims against [Agent] Player."  (Def.'s Br. at 9).  Thus, the Court construes Officer Player's papers as moving to dismiss Plaintiff's Fourth Amendment claim on the basis that Plaintiff incorrectly asserts that claim under § 1983 rather than Bivens.  The Court nevertheless rejects Officer Player's argument that Plaintiff's Fourth Amendment claim should be dismissed.  Count I does not cite § 1983.  It simply alleges that Officer Player violated Plaintiff's Fourth Amendment rights.  Because the Supreme Court authorized such claims against federal officials in Bivens, Plaintiff's claim is proper.

Officer Player also argues that to the extent that Plaintiff asserts claims against him under § 1983, those claims should be dismissed because he was a federal agent acting under federal law and § 1983 applies only to officials acting under "color or state law." Officer Player further argues that even if the Court were to construe Plaintiff's § 1983 claims as a Bivens claim,[5] Plaintiff's due-process claims should be dismissed for failure to state a claim. Officer Player argues that Plaintiff's claims for constitutional violations against Officer Player in his official capacity should be dismissed because the United States did not waive sovereign immunity for constitutional claims under Bivens. Plaintiff opposed Officer Player's motion to dismiss, and the motion is now ripe for review.

## II.   LEGAL STANDARD

### A. Rule 12(b)(1)

Rule 12(b)(1) permits a court to dismiss a case for lack of subject-matter jurisdiction. Motions under Rule 12(b)(1) may be "facial" or "factual" challenges to the court's jurisdiction. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A factual challenge "may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed." Id. at 891-92. During a factual challenge, "no presumptive truthfulness attaches to [the] plaintiff's allegations" and the court may consider and weigh evidence outside of the pleadings. Id. at 891. The plaintiff bears "the burden of proof that jurisdiction . . . exist[s]." Id. When the moving party supports its motion with a sworn statement of facts, "the court should treat the . . . challenge as a factual attack on jurisdiction." Med. Soc'y of N.J. v. Herr, 191 F. Supp. 2d 574, 578 (D.N.J. 2002).

---

[5] Pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), a plaintiff may bring a claim against a federal official for violation of the plaintiff's constitutional rights.

4

**B. Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In addition to the allegations in the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint. Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 255 n.5 (3d Cir. 2004).

In determining whether a complaint states a plausible claim for relief, a court must conduct a two-part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

### III. DISCUSSION

#### A. Plaintiff's Common-Law Tort Claims

Plaintiff asserts common-law tort claims against Officer Player in his official and individual capacities for assault and battery and intentional infliction of emotional distress. Generally, the United States is immune from suit unless it consents to be sued. See United States v. Sherwood, 312 U.S. 584, 586 (1941). The FTCA is a limited waiver of sovereign immunity and provides the exclusive remedy for alleged tortious acts or omissions of federal employees. See 28 U.S.C. § 2679(a). Counsel for the United States argues that, pursuant to the FTCA, the Court should substitute the United States for Officer Player and dismiss Plaintiff's FTCA claims against the United States for failure to exhaust administrative remedies. The Court addresses both issues in turn.

#### 1. Substitution of the United States for Officer Player

The FTCA provides that a distinct court must substitute the United States for a federal official as the defendant in a tort action if the Attorney General certifies that the federal official was acting within the scope of his employment. See 28 U.S.C. § 2679(d)(1). Specifically, 28 U.S.C. § 2679(d)(1) provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

See Hinkle v. United States, No. 11-02345, 2011 U.S. Dist. LEXIS 73662, at *1-2 (D.N.J. July 7, 2011) (substituting United States for federal official pursuant to 28 U.S.C. § 2679(d)(1)). The district court must substitute the United States for the named federal official even if the plaintiff

may not have a claim against the United States as a result of the substitution. See Mitchell v. Carlson, 896 F.2d 128, 135-36 (5th Cir. 1990) (holding that district court was "required" to substitute the United States for the federal official even though the FTCA did not permit the plaintiff to bring his claims against the United States).

Here, a representative of the Attorney General provides a certification stating:

> I find that defendant Jason Player was acting within the scope of his employment as a deputized Task Force Officer for the Drug Enforcement Administration, and that, pursuant to 5 U.S.C. § 3374(c)(2), he was therefore acting within the scope of his employment as an employee of the United States at the time of the conduct alleged in the Complaint.

(Cert. of Susan J. Steele dated Jan. 5, 2011). Officer Player argues that pursuant to this Certification, the Court must substitute the United States for Officer Player regarding Plaintiff's tort claims. Plaintiff does not oppose the substitution.[6] Because the government submitted the appropriate certification pursuant to 28 U.S.C. § 2679(d)(1), the Court substitutes the United States for Officer Player regarding Plaintiff's FTCA claims for assault and battery (Count V) and intentional infliction of emotional distress (Count VI).[7] See Osborne v. Haley, 549 U.S. 225, 241 (2007) ("If the action is commenced in a federal court, and the Attorney General certifies that the employee 'was acting within the scope of his office or employment at the [relevant] time,' the United States must be substituted as the defendant.") (quoting 28 U.S.C. § 2679(d)(1)).

---

[6] Plaintiff states: "Plaintiff is amenable to substituting the United States for Defendant Player officially as suggested by defense counsel in her moving papers; however, it is Plaintiff's position that such substitution is not necessary. (Pl.'s Opp'n Br. at 11 n. 3).

[7] The Amended Complaint mistakenly numbers Plaintiff's claim for intentional infliction of emotional distress as Count VII.

### 2. Dismissal of the United States for Failure to Exhaust Administrative Remedies

The FTCA is a limited waiver of the sovereign immunity for claims against the United States. The FTCA provides, in relevant part, that the United States shall be liable, to the same extent as a private party, "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b); see 28 U.S.C. § 2674; see also Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003). Although § 1346(b)(1) of the FTCA grants federal district courts exclusive jurisdiction over civil actions or claims against the United States, a party bringing suit under the FTCA must first present the claim to the appropriate federal agency and receive a final denial in writing before proceeding in the district court. See 28 U.S.C. § 2675(a). A claim is deemed presented when the federal agency receives written notification of the alleged tortious incident and injuries accompanied by the claim for money damages in a sum certain. 28 U.S.C. § 2675(b); see also 28 C.F.R §14.2.

"Because the [FTCA] constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed." Livera v. First Nat'l State Bank of N.J., 879 F.2d 1186, 1194 (3d Cir. 1989). Thus, the administrative exhaustion requirements under the FTCA are clear and mandatory. See Castro v. United States, No. 10-5199, 2010 U.S. Dist. LEXIS 122857, at *9-11 (D.N.J. Nov. 15, 2010). Moreover, because the exhaustion requirement is a condition of the United States' waiver of sovereign immunity, it is jurisdictional and cannot be waived. See White-Squire v. U.S. Postal Service, 592 F.3d 453, 457 (3d Cir. 2010) (relying on Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir. 1971)).

Here, the United States argues that the Court lacks jurisdiction to hear Plaintiff's tort claims because Plaintiff did not exhaust administrative remedies as required by the FTCA.

Plaintiff does not deny that the FTCA requires him to exhaust administrative remedies.  Rather, Plaintiff argues that he complied with the FTCA's exhaustion requirements because he:  (1) "first put the DEA on notice of his claims when he made Freedom of Information Act requests prior to . . . filing . . . the original Complaint"; and (2) submitted a claim to the DEA after filing the Complaint in this litigation.  On January 25, 2011, while this motion was pending, the DEA issued a final written denial of Plaintiff's claim pursuant to 28 U.S.C. § 2675(a).  The United States argues that the Amended Complaint should be dismissed for lack of jurisdiction because Plaintiff did not exhaust administrative remedies <u>before</u> filing the Complaint.  See 28 U.S.C. § 2675(a) (stating that a plaintiff may not sue in court unless he has "<u>first</u> presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail) (emphasis added).

      The Supreme Court's ruling in <u>McNeil v. United States</u>, 508 U.S. 106 (1993), controls this case.  In <u>McNeil</u>, a pro se plaintiff filed a complaint in federal court against the United States Public Health Service under the FTCA.  <u>Id.</u> at 107.  The plaintiff did not submit an administrative claim before filing the complaint.  <u>Id.</u> 107-08.  The plaintiff filed an administrative claim four months after filing the complaint, and the United States Public Health Service issued a written denial of the claim.  <u>Id.</u> at 108.  The United States subsequently moved to dismiss the complaint for lack of jurisdiction because the plaintiff did not exhaust administrative remedies before filing suit in court.  <u>Id.</u> at 108-09.  The district court dismissed the complaint.  <u>Id.</u> at 109.

      On appeal to the Supreme Court, the plaintiff argued that he timely filed his complaint because:  (1) the action was timely when originally filed and the subsequent administrative proceedings satisfied the FTCA's exhaustion requirement; and (2) the district court should have

9

construed the complaint as filed on the date the United States Public Health Service denied the administrative claim. Id. The Supreme Court rejected both arguments. Id. at 110-13. Regarding the first argument, the Court held that the FTCA's language unambiguously required the plaintiff to obtain a final administrative ruling before filing suit in court. Id. at 111. Regarding, the second argument, the FTCA provides that a plaintiff may "institute" a claim in court only after obtaining a final administrative ruling. See 28 U.S.C. § 2675(a). The Supreme Court held that the word "institute" is synonymous with the words "begin" and "commence." McNeil, 508 U.S. at 112. Thus, the Supreme Court concluded that the plaintiff instituted the litigation when he filed the complaint and not when the agency subsequently issued a denial of his administrative claim. Id. at 112. Because the plaintiff instituted the litigation before obtaining a final decision regarding his administrative claim, the Court upheld the district court's dismissal of the complaint. Id. at 113 ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies. Because petitioner failed to heed that clear statutory command, the District Court properly dismissed his suit.").

McNeil is indistinguishable from this case. As in McNeil, Plaintiff filed the Complaint approximately four months before submitting his administrative claim. The DEA subsequently denied Plaintiff's administrative claim. Plaintiff has not instituted a new action. Rather, he argues that the DEA's determination vests the Court with jurisdiction over Plaintiff's claims even though he filed those claims before obtaining an administrative ruling. However, as explained above, the Supreme Court expressly rejected that argument. See McNeil, 508 U.S. at 110-13; Wadhwa v. Nicholson, 367 F. App'x. 322, 325 (3d Cir. 2010) (noting that there is a "strict requirement that administrative exhaustion must be complete before a party may institute a civil action in District Court under the FTCA"). Because Plaintiff did not obtain an

administrative ruling before he filed the Complaint, the Court does not have jurisdiction to adjudicate Plaintiff's FTCA claims against the United States.[8]

### B. Plaintiff's Constitutional Claims Against Officer Player in His Official Capacity

Officer Player argues that all constitutional claims against him in his official capacity should be dismissed under the doctrine of sovereign immunity.[9]

Counts I-III assert claims against Officer Player in his individual and official capacity for constitutional violations. Pursuant to Bivens, a plaintiff may assert claims against a federal official for constitutional violations. See Bivens, 403 U.S. at 397. However, "[a]n action against government officials in their official capacities constitutes an action against the United States." Huberty v. United States Ambassador to Costa Rica, 316 F. App'x. 120, 122 (3d Cir. 2008). Moreover, it is well-settled that "Bivens claims against the United States are barred by sovereign immunity, absent an explicit waiver." Id. (citing FDIC v. Meyer, 510 U.S. 471, 483 (1994); Jaffee v. United States, 592 F.2d 712, 717 (3d Cir. 1979)). Here, the United States has not waived sovereign immunity. Thus, Plaintiff's constitutional claims against Officer Player in his official capacity are barred by the doctrine of sovereign immunity.

---

[8] The Court is aware that the FTCA's six-month statute of limitations may now bar Plaintiff's FTCA claims. See 28 U.S.C. § 2401(b) ("a tort claim against the United States shall be forever barred unless … action is begun within six months after the date of mailing by certified or registered mail of notice of the final denial of the claim by the agency to which it is presented"). However, that fact does not exempt Plaintiff from the FTCA's exhaustion requirement. In McNeil, the Supreme Court held that the FTCA's exhaustion provisions are clear and that pro se litigants are not excused from compliance with those provisions. See McNeil, 508 U.S. at 113. By submitting an administrative claim after he filed the Complaint, Plaintiff demonstrated that he was aware of the FTCA's exhaustion requirements. Moreover, Plaintiff filed his opposition brief soon after he filed his administrative claim. In that brief, Plaintiff acknowledged the FTCA's exhaustion requirement. Thus, Plaintiff was aware of the FTCA's requirements. Plaintiff could have withdrawn his FTCA claims in this case and filed a separate action once the DEA decided his administrative claim. He chose instead to rely on his argument that the Complaint was proper. Plaintiff's litigation strategies do not justify an exception to the FTCA's exhaustion requirement.

[9] Officer Player moves to dismiss all claims against him in his official capacity based on sovereign immunity. (Def.'s Br. at 10) ("all claims against [Agent] Player in his official capacity should be dismissed for lack of jurisdiction . . . because the United States has not waived soverign immunity for those types of claims."). Because the Court dismisses Plaintiff's FTCA claims against Officer Player and the United States for failure to exhaust administrative remedies, the Court need only consider whether Plaintiff's constitutional claims against Officer Player in his official capacity should be dismissed under the doctrine of sovereign immunity.

### C. Plaintiff's § 1983 Claims Against Officer Player in his Individual Capacity

Officer Player argues that to the extent Plaintiff asserts claims against Officer Player under § 1983 in his individual capacity, those claims should be dismissed because Officer Player did not act under color of state law.

Section 1983 creates a cause of action for persons whose federal rights are violated by government officials acting under the "color of state law." 42 U.S.C. § 1983. Section 1983 does not create a cause of action for persons whose rights are violated by federal officials acting under federal law. A plaintiff may assert a claim under § 1983 against a federal official if the official was conspiring with state officials acting under color of state law. See Melo v. Hafer, 912 F.2d 628, 638 (3d Cir. 1990). However, to state a claim against a federal official based on a conspiracy, the plaintiff must specifically plead facts sufficient to establish that the federal official conspired to violate the plaintiff's rights under color of state law. See Jean-Louis v. Clifford, No. 06-3972, 2008 U.S. Dist. LEXIS 61442, at *11 (D.N.J. Aug. 11, 2008) (dismissing conspiracy claim under § 1983 against federal official because plaintiff pled only in conclusory terms that defendant conspired to violate plaintiff's rights).

Here, Officer Player was a deputized federal agent. The Attorney General's office has certified that Officer Player was acting within his scope of employment as a federal agent. Moreover, Plaintiff does not allege any facts establishing that Officer Player was party to a conspiracy with state officials. Thus, to the extent Plaintiff asserts claims against Officer Player under § 1983, those claims are dismissed.

### D. Plaintiff's Due Process Claims Against Officer Player in his Individual Capacity

Counts II and III assert substantive and procedural due process claims against Officer Player under the Fourteenth Amendment. Officer Player moves to dismiss those claims because:

(1) the Fourteenth Amendment does not apply to federal officials acting under federal law; and (2) even if the Court construes Counts II and III as due process claims under the Fifth Amendment, which applies to federal officials, the more-specific-provision rule bars Plaintiff's due process claims in favor of his Fourth Amendment Claim.

Officer Player is correct that the Fourteenth Amendment does not apply to Plaintiff's claims against him as a federal officer.[10] See Lydic v. Rotz, No. 05-904, 2006 U.S. Dist. LEXIS 14201, at *10 (M.D. Pa. Mar. 13, 2006) (noting that Fourteenth Amendment due process claims "are appropriate only when brought against state actors"); In re Auto. Refinishing Paint Antitrust Litig., 229 F.R.D. 482, 488 (E.D. Pa. 2005) ("The Fifth Amendment's Due Process Clause applies to the federal government . . . while the Fourteenth Amendment Due Process Clause applies to the states."). However, without addressing whether it is appropriate to construe Plaintiff's due process claims against Officer Player as claims under the Fifth Amendment, see Lydic, 2006 U.S. Dist. LEXIS 14201, at *10 n.6 (construing Fourteenth Amendment due process claim as a Fifth Amendment claim), the Court concludes that the more-specific-provision rule bars Plaintiff's due process claims.

The more-specific provision rule provides: "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997). However, not "all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments." Id. The Fourth Amendment search and seizure

---

[10] Plaintiff argues that he states a claim under the Fourteenth Amendment because Officer Player conspired with state officials. As discussed above, the Court rejects that argument because the Amended Complaint does not allege facts sufficient to establish conspiracy. See Jean-Louis, 2008 U.S. Dist. LEXIS 61442, at *11 (dismissing conspiracy claim under § 1983 against federal official because plaintiff pled only in conclusory terms that defendant conspired to violate plaintiff's rights).

paradigm applies if the government uses excessive force during an arrest. See Graham v. Connor, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"). But, the Supreme Court has not decided "whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins." Id. Nevertheless, the "majority of circuits hold that the Fourth Amendment applies until an individual arrested without a warrant appears before a neutral magistrate for arraignment or for a probable cause hearing or until the arrestee leaves the joint or sole custody of the arresting officer or officers." Aldini v. Johnson, 609 F.3d 858, 864 n.6 (6th Cir. 2010).[11]

      Here, it is unclear whether the alleged assault occurred during or immediately after Plaintiff's arrest. However, as discussed above, the Fourth Amendment applies because in either scenario Officer Player assaulted Plaintiff before he appeared in front of a neutral magistrate. See Fuchs, 2011 U.S. Dist. LEXIS 47797, at *18 (concluding that the Fourth Amendment applies until "until such time as the arrestee has had an arraignment or probable cause hearing"). Because the Fourth Amendment applies to Plaintiff's claims, the more-specific-provision rule bars Plaintiff's due process claims.[12]

---

[11] The Third Circuit has not addressed the issue, but district courts within the Third Circuit hold that the Fourth Amendment applies to pretrial detainees at least until they appear before a neutral magistrate. See Fuchs v. City of Farrell, 2011 U.S. Dist. LEXIS 47797, at *18 (W.D. Pa. Apr. 7, 2011) ("This Court predicts that, if presented with the question, the Court of Appeals for the Third Circuit would agree with the reasoning of the Sixth, Eighth, Ninth and Tenth Circuits and apply the Fourth Amendment until such time as the arrestee has had an arraignment or probable cause hearing."). This Court agrees with that approach. See id. (providing a comprehensive review of authority and concluding that Third Circuit would adopt majority approach).

[12] Plaintiff asserts substantive and procedural due process claims. The Supreme Court developed the more-specific-provision rule in the substantive due process context. See Graham, 490 U.S. at 395. However, courts dismiss both substantive and procedural due process claims when "the graveman of [the plaintiff's] lawsuit is so clearly premised

## IV.    CONCLUSION

For the reasons discussed above, the Court dismisses all claims against Officer Player except Plaintiff's Fourth Amendment claim against Officer Player in his individual capacity.  An appropriate Order shall enter.


Dated: 8/18/2011                                             /s/ Robert B. Kugler
                                                             ROBERT B. KUGLER
                                                             United States District Judge

---

on a . . . Fourth Amendment violation."  Swedron v. Borough, No. 08-1095, 2008 U.S. Dist. LEXIS 94891, at *6 (W.D. Pa. Nov. 21, 2008); see Regan v. Upper Darby Twp., No. 06-1686, 2009 U.S. Dist. LEXIS 19810, 53 n.19 (E.D. Pa. Mar. 11, 2009) (dismissing procedural due process claim).  Thus, Plaintiff's procedural due process claim is also dismissed.